EAGLE BOOKS, INC., d/b/a Urbana News, Plaintiff-Appellant, v. RICHARD M. JONES *et al.*, Defendants-Appellees.

Fourth District   No. 4—84—0591

Opinion filed January 30, 1985.

Glenn A. Stanko, of Reno, O'Byrne & Kepley, P.C., of Champaign, for appellant.

Joseph D. Pavia, of Kirtley, Pavia & Marsh, P.C., of Urbana, for appellees.

JUSTICE MILLS delivered the opinion of the court:

Pornography is, at best, a seamy business.

But as distasteful as it may be to most of us, it is still legal to traffic in it—at least as of this writing.

Eagle Books/Urbana News is an adult bookstore. It filed a complaint on August 3, 1984, seeking preliminary and permanent injunctive relief from certain picketing activities which defendants conducted at plaintiff's business premises. On August 7, 1984, a hearing was held, and the circuit court preliminarily enjoined defendants from

trespassing on plaintiff's business premises and from blocking access to the business.

However, the court denied the bookstore's request that defendants be enjoined from harassing and intimidating its patrons and employees through the use of shouts, verbal abuse, and through the taking of photographs or license plate numbers, or the threatened taking of photographs or license plate numbers. Plaintiff's requests that the number of picketers be limited and that they be restrained from interfering with traffic in front of plaintiff's store were also denied.

The bookstore now brings this interlocutory appeal from that part of the court's order which denied portions of its request for preliminary injunctive relief.

We affirm.

The complaint stated that plaintiff owns and operates an adult bookstore and arcade located at the corner of Cunningham Avenue and Park Street in Urbana. Parking is available on three sides of the store, and a public sidewalk is located along Cunningham Avenue, approximately 20 to 30 feet from the store.

The complaint alleged that defendants had engaged in picketing activities at plaintiff's business premises since late June 1984. The number of picketers had ranged from four to 20, with the picketing being conducted mainly during the lunch hour on weekdays, during the evenings on weekdays, and on Saturdays.

Plaintiff attached to its complaint two newspaper articles which contained statements alleged to have been made by defendants indicating that the purpose of the picketing was to force plaintiff to close its store by discouraging patrons from entering the premises. Defendant Richard Jones was quoted as stating that "anybody who does not want their picture taken had better not come here."

Plaintiff alleged that the defendants had been harassing and intimidating its patrons, potential patrons, and employees by taking photographs, threatening to take photographs, threatening to publish photographs, taking license plate numbers, threatening to take license plate numbers, shouting, and verbal abuse. Several specific incidents were alleged, including one involving a patron towards whom the defendants had directed a chant while he was in the store, and another involving derogatory comments by a picketer directed at a female employee. The plaintiff also alleged that one patron shoved a picketer who "jumped" in front of him to take his picture. Numerous trespasses were also alleged. It was alleged that the number of picketers was such that entry into plaintiff's parking area was impeded and discouraged. Plaintiff also claimed that traffic on Cunningham Av-

enue was interfered with.

Plaintiff alleged "numerous" calls to the Urbana police department with no resulting charges. It further complained of a substantial loss of revenue during the period in which the picketing had been conducted. Plaintiff sought preliminary and permanent injunctive relief from the activities of the defendants.

On August 7, 1984, defendants filed an "Objection to Issuance of Temporary Restraining Order or Preliminary Injunction." They claimed therein that the allegations in the complaint were insufficient to support the issuance of a preliminary injunction.

Also on August 7, 1984, a hearing was held on plaintiff's request for a preliminary injunction. After the hearing, the court enjoined the defendants from trespassing and from blocking access to plaintiff's premises. However, all other aspects of plaintiff's request for preliminary injunctive relief were denied. Plaintiff subsequently filed timely notice of interlocutory appeal, pursuant to Supreme Court Rule 307(a)(1) (87 Ill. 2d R. 307(a)(1)).

On appeal, plaintiff alleges that the circuit court improperly denied plaintiff's request that defendants be enjoined from harassing and intimidating its patrons and employees through the use of shouts, verbal abuse, and by taking photographs, threatening to take photographs, threatening to publish photographs, taking license plate numbers, and threatening to take license plate numbers. Plaintiff also claims that the trial court erred by failing to preliminarily enjoin defendants from interfering with traffic on Cunningham Avenue and by failing to limit the number of picketers. Defendants respond that the trial court's decision was not error, primarily because plaintiff failed to show a likelihood of success on the merits of its requests.

The party requesting a preliminary injunction must show: (1) that he possesses a right which needs protection; (2) that he will suffer irreparable injury without the protection; (3) that there is no adequate remedy at law; (4) that he has a substantial likelihood of succeeding on the merits; and (5) in the absence of preliminary relief, he will incur a greater injury than would be received by the objector if the relief was granted. (*Johnson v. Gene's Supermarket, Inc.* (1983), 117 Ill. App. 3d 295, 453 N.E.2d 83.) The purpose of a preliminary injunction is to preserve the status quo. (*Illinois Consolidated Telephone Co. v. Aircall Communications, Inc.* (1981), 101 Ill. App. 3d 767, 428 N.E.2d 747.) On review, the decision of the circuit court in granting or denying a request for preliminary injunction will not be disturbed absent an abuse of discretion. *Lums Restaurant Corp. v. Bloomington Restaurant Investments, Inc.* (1981), 92 Ill. App. 3d

1143, 416 N.E.2d 751.

Here, plaintiff claims that it has properly established each of the above-listed, required showings. Defendants do not argue that requirements (1) and (5) were not established. However, they do argue that plaintiff failed to establish irreparable injury, an inadequate remedy at law, and a likelihood of success on the merits. Defendants concede that all of plaintiff's well-pleaded facts must be taken as true since an answer to the complaint had not been filed at the time of the hearing. See *Johnson v. Gene's Supermarket, Inc.* (1983), 117 Ill. App. 3d 295, 453 N.E.2d 83.

Without any citation to authority, defendants claim that plaintiff has failed to demonstrate irreparable injury. However, the loss of customers and sales and the threat of the continuation of such losses to a legitimate business interest, as alleged by plaintiff here, is sufficient to show that plaintiff will suffer irreparable injury unless protected by the court. *U-Haul Co. v. Hindahl* (1980), 90 Ill. App. 3d 572, 413 N.E.2d 187; *Office Electronics, Inc. v. Grafic Forms, Inc.* (1978), 56 Ill. App. 3d 395, 372 N.E.2d 125.

Defendants also allege that money damages would provide plaintiff with an adequate legal remedy. However, while immediate damages in loss of sales may be calculable, the potential loss of future business is incapable of adequate computation. (*U-Haul Co. v. Hindahl* (1980), 90 Ill. App. 3d 572, 413 N.E.2d 187.) Moreover, even though plaintiff's ultimate recovery may be a money judgment, a preliminary injunction may be granted when damages are difficult to quantify at the time of the hearing. (*Lums Restaurant Corp. v. Bloomington Restaurant Investments, Inc.* (1981), 92 Ill. App. 3d 1143, 416 N.E.2d 751.) The threatened loss of future customers and revenues made plaintiff's remedy at law inadequate here.

The most serious issue raised on appeal is whether the plaintiff has shown a likelihood of success on the merits. In its written order, the circuit court denied the part of plaintiff's request for injunctive relief that is the subject of this appeal for the reason that "plaintiff would have no likelihood of success on the merits." Therefore, plaintiff argues that the circuit court abused its discretion in determining that it had no likelihood of success on the merits.

Initially, plaintiff concedes that, in general, picketing is an exercise of the freedom of speech protected by the first and fourteenth amendments to the United States Constitution. However, plaintiff claims that picketing may be restricted by the courts when it is directed toward an unlawful purpose or when it is conducted in a violent manner. The plaintiff argues that the allegations in its complaint

demonstrate that defendants' picketing here was directed toward an unlawful purpose and was violent in manner. Accordingly, plaintiff argues that defendants should have been preliminarily enjoined from using harassing and intimidating tactics in furtherance of an unlawful purpose. ·

Plaintiff first argues that an absolute prohibition of picketing activities is appropriate where the picketing is for an unlawful purpose. Plaintiff cites *Hughes v. Superior Court* (1950), 339 U.S. 460, 94 L. Ed. 985, 70 S. Ct. 718, *Teamsters Local 309 v. Hanke* (1950), 339 U.S. 470, 94 L. Ed. 995, 70 S. Ct. 773, *Building Service Employees International Union, Local 262 v. Gazzam* (1950), 339 U.S. 532, 94 L. Ed. 1045, 70 S. Ct. 784, *Board of Education v. Redding* (1965), 32 Ill. 2d 567, 207 N.E.2d 427, and *Bitzer Motor Co. v. Teamsters Local 604* (1953), 349 Ill. App. 283, 110 N.E.2d 674, in support of this proposition.

However, these cases involved government regulation of economic activity and labor disputes, unlike the present case. The distinction between picketing involving commercial activity and public issue or political picketing was detailed by the Supreme Court in its recent decision of *NAACP v. Claiborne Hardware Co.* (1982), 458 U.S. 886, 912-13, 73 L. Ed. 2d 1215, 1235-36, 102 S. Ct. 3409, 3425-26, where it stated:

> "This Court has recognized the strong governmental interest in certain forms of economic regulation, even though such regulation may have an incidental effect on rights of speech and association. [Citations.] *** Secondary boycotts and picketing by labor unions may be prohibited, as part of 'Congress' striking of the delicate balance between union freedom of expression and the ability of neutral employers, employees, and consumers to remain free from coerced participation in industrial strife.' [Citations.]
>
> While States have broad power to regulate economic activity, we do not find a comparable right to prohibit peaceful political activity such as that found in the boycott in this case. This Court has recognized that expression on public issues 'has always rested on the highest rung of the hierarchy of First Amendment values.' [Citation.] '[S]peech concerning public affairs is more than self-expression; it is the essence of self-government.' [Citation.] There is a 'profound national commitment' to the principle that 'debate on public issues should be uninhibited, robust, and wide-open.' [Citation.]"

Therefore, the cases cited by plaintiff can be distinguished as involv-

ing economic or commercial matters over which government has greater regulatory powers. All of the cases involved labor dispute picketing which the respective courts deemed unlawful. These decisions involved cases in which the picketers' rights had to be balanced against a strong governmental interest in economic and commercial regulation that is absent in the present case. Instead, the defendants, here, are participating in a form of public issue picketing which the court spoke of in *NAACP.*

Plaintiff also cites *Austin Congress Corp. v. Mannina* (1964), 46 Ill. App. 2d 192, 196 N.E.2d 33, for the proposition that picketing for the purpose of economic ruination is unlawful. However, that case should be read in light of two subsequent Supreme Court cases, *NAACP v. Claiborne Hardware Co.* (1982), 458 U.S. 886, 73 L. Ed. 2d 1215, 102 S. Ct. 3409, and *Organization for a Better Austin v. Keefe* (1971), 402 U.S. 415, 29 L. Ed. 2d 1, 91 S. Ct. 1575. In *NAACP* the petitioners used picketing and other activities to urge a boycott of certain merchants who allegedly practiced racial discrimination. The Supreme Court stated that "the petitioners certainly foresaw—and directly intended—that the merchants would sustain economic injury as a result of their campaign"; however, the State interest in economic regulation could not justify an injunction against a politically motivated boycott designed to force economic change. (458 U.S. 886, 914, 73 L. Ed. 2d 1215, 1236-37, 102 S. Ct. 3409, 3426.) The Supreme Court also expressed approval of an earlier case involving picketing designed to inflict economic injury:

"In *Thornhill v. Alabama,* 310 U.S. 88, 84 L. Ed. 1093, 60 S. Ct. 736, the Court held that peaceful picketing was entitled to constitutional protection, even though, in that case, the purpose of the picketing 'was concededly to advise customers and prospective customers of the relationship existing between the employer and its employees and thereby to induce such customers not to patronize the employer.' " *NAACP v. Claiborne Hardware Co.* (1982), 458 U.S. 886, 909, 73 L. Ed. 2d 1215, 1233, 102 S. Ct. 3409, 3424.

Likewise, in *Keefe* the petitioners' pamphleteering was designed to injure respondent's real estate business by forcing respondent to end his sale of real estate in the community of Austin. The Supreme Court stated:

"Petitioners plainly intended to influence respondent's conduct by their activities; this is not fundamentally different from the function of a newspaper. [Citation.] Petitioners were engaged openly and vigorously in making the public aware of respond-

ent's real estate practices. Those practices were offensive to them, as the views and practices of petitioners are no doubt offensive to others. But so long as the means are peaceful, the communication need not meet standards of acceptability." *Organization for a Better Austin v. Keefe* (1971), 402 U.S. 415, 419, 29 L. Ed. 2d 1, 5, 91 S. Ct. 1575, 1577-78.

It is clear, then, that public issue picketing is entitled to full first amendment protection. Where, as here, such picketing also inflicts economic injury on the object of the picketing, that fact alone does not make the picketing unlawful. (*NAACP v. Claiborne Hardware Co.* (1982), 458 U.S. 886, 73 L. Ed. 2d 815, 102 S. Ct. 3409; *Organization for a Better Austin v. Keefe* (1971), 402 U.S. 415, 29 L. Ed. 2d 1, 91 S. Ct. 1575; *Thornhill v. Alabama* (1940), 310 U.S. 88, 84 L. Ed. 1093, 60 S. Ct. 736.) Although defendants' message may have injured the plaintiff economically, it was still entitled to full first amendment protection.

■ Plaintiff next argues that defendants' activities which involved violence and threats of violence should have been enjoined by the circuit court.

The Supreme Court has noted that picketing involves elements of both speech and conduct and has indicated that the "conduct" aspect of picketing may be controlled as to time, place, and manner. (*Amalgamated Food Employees Union, Local 590 v. Logan Valley Plaza, Inc.* (1968), 391 U.S. 308, 20 L. Ed. 2d 603, 88 S. Ct. 1601.) It is clear that picketing which is conducted in a violent manner may be restrained. *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.* (1968), 391 U.S. 308, 20 L. Ed. 2d 603, 88 S. Ct. 1601; *Milk Wagon Drivers Union Local 753 v. Meadowmoor Dairies, Inc.* (1941), 312 U.S. 287, 85 L. Ed. 836, 61 S. Ct. 552.

Plaintiff claims that actions by the defendants involving the taking of photographs and license plate numbers of its patrons and employees, as well as verbal abuse directed at patrons and employees, constitute intimidation which may be enjoined. The plaintiff cites *Ellingsen v. Milk Wagon Drivers' Union, Local 753* (1941), 377 Ill. 76, 35 N.E.2d 349, in support of its position. In *Ellingsen*, the Illinois Supreme Court stated:

"[T]hreats and attempts to coerce by intimidation are not peaceful picketing ***. We are of the opinion that such threats amount to conduct which may be enjoined." 377 Ill. 76, 86, 35 N.E.2d 349, 354.

However, this case should be read in light of the recent Supreme Court decision in *NAACP*. There the picketers also engaged in "store

watching" wherein individual picketers stood outside of the boycotted stores and identified those who traded with the merchants. The names of the persons who violated the boycott were read at meetings of the local NAACP chapter and were published in a local newspaper. These persons were branded as traitors, socially ostracized, and called demeaning names. The Supreme Court stated that there was nothing unlawful about the boycotters' activities even though they may have caused apprehension in others. The court went on to state that marches, speeches, and threats of social ostracism are all entitled to constitutional protection. The Supreme Court also stated that constitutionally protected speech "does not lose its protected character *** simply because it may embarrass others or coerce them into action." (458 U.S. 886, 910, 73 L. Ed. 2d 1215, 1234, 102 S. Ct. 3409, 3424.) Accordingly, the Supreme Court reversed the judgment of the Mississippi Supreme Court to the extent that its judgment rested "on the ground that 'many' black citizens were 'intimidated' by 'threats' of 'social ostracism, vilification, and traduction,' " since such a judgment would be "flatly inconsistent with the First Amendment." (458 U.S. 886, 921, 73 L. Ed. 2d 1215, 1242, 102 S. Ct. 3409, 3430.) Indeed, it would appear that nearly all picketing involves some degree of "intimidation."

In the present case, defendants' photograph taking, license plate number recording, and isolated instances of verbal abuse were meant to embarrass and coerce patrons of plaintiff's business. These tactics are very similar to the ones employed by the boycott participants in *NAACP*. On the basis of that case, we cannot say that these tactics rise to the level of "violence" that is subject to government control. Similarly, the single instance of actual violence alleged in plaintiff's complaint cannot serve to taint the defendants' collective activity as "violent." (See *NAACP v. Claiborne Hardware Co.* (1982), 458 U.S. 886, 73 L. Ed. 2d 1215, 102 S. Ct. 3409; *Milk Wagon Drivers Union, Local 753 v. Meadowmoor Dairies, Inc.* (1941), 312 U.S. 287, 85 L. Ed. 836, 61 S. Ct. 552.) Such trivial instances of violence on the part of the objects of the picketing should not form the basis for an injunction of defendants' otherwise peaceful activities.

■ The plaintiff also claims that the defendants' activities amount to "intimidation" in violation of section 12—6 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 12—6). However, as a general rule, courts will not enjoin criminal activity unless the conduct that constitutes the crime also serves as a basis for equitable intervention. (*People ex rel. Director of the Department of Children & Family Services v. Illinois Protestant Children's Home, Inc.* (1965),

33 Ill. 2d 60, 210 N.E.2d 217, *cert. denied* (1966), 384 U.S. 905, 16 L. Ed. 2d 358, 86 S. Ct. 1338; *Burden v. Hoover* (1956), 9 Ill. 2d 114, 137 N.E.2d 59.) Since defendants' alleged intimidating tactics here do not provide a basis for enjoining the picketing (see *NAACP v. Claiborne Hardware Co.* (1982), 458 U.S. 886, 73 L. Ed. 2d 1215, 102 S. Ct. 3409), the fact that a criminal law may have been violated does not make their conduct more "enjoinable."

■ Finally, the plaintiff claims that the number of picketers, as well as their activities, serves to endanger motorists traveling on Cunningham Avenue. This allegation, even when taken as true, does not amount to violent or unlawful conduct on the part of the defendants. Furthermore, the plaintiff has no standing to argue an injury to the public in general. *Irving-Austin Building Corp. v. Village Homebuilders, Inc.* (1941), 312 Ill. App. 179, 37 N.E.2d 927.

For all of the foregoing reasons, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

McCULLOUGH and TRAPP, JJ., concur.