DAVID HARTLEIN, Petitioner-Appellee, v. ILLINOIS POWER COMPANY, Respondent-Appellant.

Fifth District   No. 5—90—0273

Opinion filed March 11, 1991.

WELCH, J., dissenting.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville (Carl W. Lee and Thomas R. Peters, of counsel), for appellant.

Amiel Cueto, of Cueto & Cueto, Ltd., of Belleville, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, David Hartlein, is employed by defendant, Illinois Power Company, and is currently receiving total temporary disability payments under the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*) as a result of a work-related injury. After being threatened that he might lose his job because of his injury and after being ordered by Illinois Power to seek employment elsewhere, plaintiff obtained a preliminary injunction restraining the company from,

*inter alia,* discharging him, "discontinuing any rights or benefits or privileges of [his] employment," or ordering him to apply for other jobs. From that order Illinois Power brings this interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)). As grounds for its appeal, the company contends that plaintiff should have been barred from bringing a common law action for injunctive relief because his claim falls within the exclusive purview of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*). In the alternative, the company argues that the circuit court's order should be reversed and the preliminary injunction vacated because plaintiff failed to establish the elements necessary to warrant preliminary injunctive relief. For the reasons which follow, we affirm.

The record before us shows that on April 20, 1990, plaintiff filed what he denominated as a "Petition for Temporary Restraining Order[,] Preliminary Injunction, and Permanent Injunction" in the circuit court of St. Clair County. Attached to that petition was an affidavit by plaintiff which incorporated by reference a "Chronology of Events" relevant to the dispute. At the hearing on plaintiff's motion for a preliminary injunction, the facts contained in the affidavit were stipulated to by Illinois Power. Those facts, together with testimony from an Illinois Power claims adjuster named Preston Martin, showed that on June 15, 1987, plaintiff sustained a serious foot injury while working for Illinois Power as an apprentice lineman. As a result of this injury, plaintiff was placed on temporary total disability.

Approximately five months after the injury occurred, plaintiff's treating physician, Dr. Chen, authorized him to return to work on the conditions that he be restricted to light duty and limited walking and that he not be permitted to do any climbing. The following month, Dr. Maurice Miller examined plaintiff at the request of Illinois Power and concluded that plaintiff could not return to work as a lineman. Illinois Power then hired a "disability management and rehabilitation" service known as ConServCo to evaluate plaintiff's condition and perform "appropriate vocational services."

Pursuant to instructions from Illinois Power, a ConServCo counselor named Michael McKee arranged to have plaintiff evaluated by Dr. Sherwyn J. Wayne. Wayne concluded that plaintiff did "not appear to be a candidate for rehabilitation to resume his previous work activities as a lineman," but recommended that he undergo a so-called "work hardening" program at the Cole Center for Work-Related Injury. At the request of Illinois Power, arrangements were made for plaintiff to participate in that program, and he enrolled in the program in the middle of August 1988. Plaintiff's participation in the

"work hardening" program ended at the end of September 1988, and Dr. Wayne then authorized him to return to work.

Plaintiff resumed working at Illinois Power on October 4, 1988. He was assigned the job of meter reader. After less than two months, however, plaintiff had to stop work again because his foot injury prevented him from completing the routes he had been assigned. When this happened, plaintiff was once again placed on temporary total disability.

On January 6, 1989, plaintiff's attorney contacted Preston Martin, the Illinois Power claims adjuster, and proposed that plaintiff be assigned to other work within the company which would be compatible with his physical limitations. This proposal was never accepted by Illinois Power. To the contrary, Martin indicated at the hearing on the preliminary injunction that as far as the company was concerned, it had no jobs which plaintiff was capable of performing. Although Illinois Power would not or could not return plaintiff to work, both the company and its workers' compensation insurance carrier did not want to continue making temporary total disability payments to him. Accordingly, a plan was formulated to require plaintiff to seek employment elsewhere.

As part of this plan, Mike McKee, the counselor from ConServCo, requested plaintiff to prepare a resume which could be sent to other prospective employers. McKee told plaintiff, however, that he should not mention his foot injury to any prospective employers. Plaintiff's attorney advised McKee that plaintiff would cooperate with Illinois Power, but that he would not lie regarding his physical condition. At the same time, plaintiff's attorney advised Preston Martin that plaintiff would not voluntarily resign from the company unless he obtained another job "exactly comparable in every respect" to the position he held at Illinois Power. The attorney also complained that plaintiff was receiving repeated threats of discharge, and he requested that Martin send him a written description of the plan the company wanted plaintiff to follow.

Plaintiff's attorney subsequently contacted Martin again and advised him that he did not believe that plaintiff was required by law to undergo a vocational rehabilitation program chosen by Illinois Power. Plaintiff's attorney asked Martin to indicate whether it was ordering or merely requesting plaintiff to continue dealing with ConServCo. Plaintiff's attorney advised Martin that if the company was simply making a request, the request was denied and that plaintiff would not cooperate further with ConServCo. Plaintiff's attorney related this same message to McKee. At the same time, he advised McKee not to

contact plaintiff directly and told him not to distribute any resumes or job applications to anyone on plaintiff's behalf.

McKee responded by sending to plaintiff's attorney a proposed rehabilitation plan which called for a "job search and attempted placement" to be conducted "within and outside Illinois Power Co." Plaintiff's attorney formally rejected McKee's proposed plan by letter dated February 7, 1989. Thereafter, on April 11, 1990, Preston Martin sent a letter to plaintiff which included a list prepared by McKee of various other employers and possible job opportunities. In the letter, Martin requested that plaintiff contact these employers regarding job availability. Martin directed plaintiff to begin this job search immediately and to contact him within two weeks to advise him of the companies he had contacted, the persons with whom he interviewed, and the results of each interview. At the hearing on the preliminary injunction, Martin testified that Illinois Power had no plans to discharge plaintiff, but that if he did not apply for other jobs, the company intended to stop his temporary total disability payments.

Plaintiff then brought his action for a temporary restraining order, preliminary injunction and permanent injunction. On April 20, 1990, the circuit court granted a temporary restraining order without notice. Under that order, Illinois Power was enjoined from "discharging [plaintiff] or from changing the status quo, or from injuring [plaintiff's] employment rights, or from discontinuing any rights or benefits or privileges of [plaintiff's] employment, or from ordering [plaintiff] to apply for other jobs." Following a hearing, the circuit court subsequently issued a preliminary injunction which incorporated these same terms. The court added, however, that it was specifically not enjoining "the Industrial Commission, nor [was] it enjoining Illinois Power from applying or petitioning to the Industrial Commission on any matter."

On this appeal, Illinois Power first contends that the order granting the preliminary injunction should be reversed and that the preliminary injunction should be vacated because plaintiff's exclusive remedy lies under the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*) and he is not entitled to bring an independent common law action. We disagree.

■ Under Illinois law, it is unlawful for an employer to discharge an employee "because of the exercise of his *** rights or remedies granted to him *** by [the Workers' Compensation] Act." (Ill. Rev. Stat. 1987, ch. 48, par. 138.4(h).) Where such a discharge takes place, the Workers' Compensation Act is not the employee's sole avenue of recourse. Rather, the employee has a cause of action against the employer in tort for retaliatory discharge. (*Kelsay v. Motorola, Inc.*

(1978), 74 Ill. 2d 172, 181-86, 384 N.E.2d 353, 357-59.) Plaintiff here expressly founds his action on this theory of recovery, and he had no alternative but to bring his retaliatory discharge claim as an independent action. Such claims must be brought independently. They cannot be pursued in a workers' compensation proceeding. *Marin v. American Meat Packing Co.* (1990), 204 Ill. App. 3d 302, 311, 562 N.E.2d 282, 288; *Garrison v. Industrial Comm'n* (1980), 83 Ill. 2d 375, 377, 415 N.E.2d 352, 354.

■■ ■ To make out a claim of retaliatory discharge, a plaintiff must plead and prove (1) that he was discharged, (2) that the discharge was in retaliation for his activities, and (3) that the discharge violates a clear mandate of public policy. (*Hinthorn v. Roland's of Bloomington, Inc.* (1988), 119 Ill. 2d 526, 529, 519 N.E.2d 909, 911.) Illinois Power contends that the first of these elements is not present here because plaintiff has never actually been fired. The record shows otherwise. To be sure, the company never directly told plaintiff that he was out of a job, and at the hearing on the preliminary injunction Preston Martin flatly denied that plaintiff had been terminated. Nevertheless, we agree with plaintiff that requiring him to seek employment elsewhere was patently inconsistent with his continued employment at Illinois Power. Plaintiff could not work for anyone else unless he quit his job or was fired, and there is no question that he did not quit. Thus, we believe that by directing plaintiff to apply for work with other employers, Illinois Power effectively discharged him from his job. 119 Ill. 2d at 531, 519 N.E.2d at 912.

It is of no consequence that the termination was not phrased more explicitly. As our supreme court has held:

> "There are no magic words required to discharge an employee: an employer cannot escape responsibility for an improper discharge simply because he never uttered the words 'you're fired.' So long as the employer's message that the employee has been involuntarily terminated is clearly and unequivocally communicated to the employee, there has been an actual discharge, regardless of the form such discharge takes." 119 Ill. 2d at 531, 519 N.E.2d at 912.

From the record before us, there can be no dispute that Illinois Power discharged plaintiff solely because he was receiving workers' compensation benefits for his work-related injury. Nor is there any doubt that under *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, such a discharge "violates a clear mandate of public policy." Accordingly, all elements of a retaliatory discharge action are present, and plaintiff was not limited to seeking redress under the

Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*).

In retaliatory discharge actions involving rights under the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*), the discharged employees typically seek money damages. (See, *e.g.*, *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353; *Bragado v. Cherry Electrical Products Corp.* (1989), 191 Ill. App. 3d 136, 547 N.E.2d 643.) This case is obviously different. No damages are claimed. Plaintiff seeks and has been granted only injunctive relief. Although the parties have not cited and we have not found any cases involving such a situation, Illinois Power does not dispute that injunctive relief may be appropriate in a retaliatory discharge action. The company argues, however, that even if plaintiff were entitled to pursue his common law retaliatory discharge action here, the circuit court nevertheless erred in granting a preliminary injunction because the elements necessary to warrant preliminary injunctive relief were not satisfied. Again we disagree.

■ A preliminary injunction is a provisional remedy granted before the hearing of a case on its merits in order to preserve the status quo, which is the last peaceable, uncontested status which preceded the pending litigation. In order for a preliminary injunction to issue, the plaintiff must establish by a preponderance of the evidence that (1) he possesses a clear right or interest needing protection, (2) no adequate remedy at law exists, (3) irreparable harm will result if an injunction is not granted, and (4) there is a likelihood of success on the merits. In addition, the trial court must balance the equities or relative inconvenience to the parties and determine whether a greater burden will be imposed on the defendant by granting the injunction than on the plaintiff by denying it. The decision to grant or deny injunctive relief rests with the sound discretion of the trial court and will not be disturbed absent a clear showing that the court abused its discretion. (*Southern Illinois Medical Business Associates v. Camillo* (1989), 190 Ill. App. 3d 664, 671-72, 546 N.E.2d 1059, 1064.) We find no abuse of discretion here.

■ As a preliminary matter, we note that while the preliminary injunction prohibits Illinois Power from changing the status quo "or from discontinuing any rights or benefits or privileges of [plaintiff's] employment," the court also expressly provided that it was "*not* enjoining the Industrial Commission, nor [was] it enjoining Illinois Power from applying or petitioning to the Industrial Commission on any matter." (Emphasis in original.) In view of this limiting language, we do not believe that the circuit court intended to require Illinois Power to

continue making temporary total disability payments pending a hearing on the merits of plaintiff's retaliatory discharge claim. Such a requirement would have been improper. Whether temporary total disability payments should be made is a question which can only be taken up in the context of a claim under the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*). Temporary total disability payments cannot be recovered in an independent action for retaliatory discharge. *Bragado v. Cherry Electrical Products Corp.* (1989), 191 Ill. App. 3d 136, 140, 547 N.E.2d 643, 645.

■ In our view, the effect of the circuit court's injunction is simply to preliminarily restrain Illinois Power from discharging plaintiff, threatening to discharge him, or altering his employment status in any way. As so construed, the circuit court's order is entirely proper. Generally, an employer may discharge an at-will employee such as plaintiff for any reason or for no reason at all. (*Veit v. Village of Round Lake* (1988), 167 Ill. App. 3d 350, 352, 521 N.E.2d 145, 147.) Correspondingly, an employer cannot, by decree of court, be compelled to retain another in his service or to reinstate him after being fired. (*Kurle v. Evangelical Hospital Association* (1980), 89 Ill. App. 3d 45, 53, 411 N.E.2d 326, 332.) The effect of *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, and its progeny, however, is to create an exception to the common law "at-will" rule where the discharge would contravene a clearly mandated public policy. (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 128, 421 N.E.2d 876, 878.) Pursuant to this exception, employees such as plaintiff possess a certain and clear right under Illinois law not to be discharged or even threatened with discharge for exercising their rights under the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*).

*Kelsay* itself involved only a claim for money damages. Accordingly, our supreme court had no occasion to pass on the question of whether it might also be appropriate to grant injunctive relief to prevent an employee from being discharged or threatened with discharge or to require that a discharged employee be reinstated pending the outcome of the litigation. In our view, however, nothing in that decision precludes such relief. (See *Kurle v. Evangelical Hospital Association* (1980), 89 Ill. App. 3d 45, 55-56, 411 N.E.2d 326, 333 (Seidenfeld, J., dissenting).) To the contrary, we believe that it would be anomalous to say, as *Kelsay* does, that an employer is prohibited from discharging or threatening to discharge an employee for asserting his rights under the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*), but then to deny the employee the right to obtain injunctive relief to prevent his discharge or to stop the threat of such a discharge

and to require him simply to seek monetary compensation after the discharge has taken place.

■ Illinois Power suggests that because plaintiff has the right to seek such monetary compensation after the fact, he has an adequate remedy at law and will not suffer irreparable harm if injunctive relief is denied. This is not so. In a commercial context it has been held that a showing of irreparable harm is related to the proof of a legitimate business interest. Once a protectible interest has been established, injury to the plaintiff will be presumed to follow if that interest is not protected. (*U-Haul Co. v. Hindahl* (1980), 90 Ill. App. 3d 572, 577, 413 N.E.2d 187, 192.) The courts have thus held, for example, that the loss of customers and sales and the threat of the continuation of such losses to a legitimate business interest is sufficient in itself to show that a plaintiff will suffer irreparable injury unless protected by the court. *Eagle Books, Inc. v. Jones* (1985), 130 Ill. App. 3d 407, 411, 474 N.E.2d 444, 447, *cert. denied* (1985), 474 U.S. 920, 88 L. Ed. 2d 257, 106 S. Ct. 249.

■ Plaintiff here, of course, does not own a business, nor does he operate a commercial enterprise for profit. He is an ordinary working man who relies on the wages he earns through his labor to support his family. As we have previously indicated, however, he has a clearly protected interest under the Workers' Compensation Act not to be discharged or threatened with discharge. In our view, there is no principled basis for according this interest any less importance than the commercial interests of a business proprietor. Accordingly, the violation of that interest by Illinois Power is sufficient, standing alone, to establish irreparable harm.

■ Moreover, we do not believe that plaintiff can be said to have an adequate remedy at law. An adequate remedy at law, the existence of which will preclude a grant of injunctive relief, is one which is clear, complete and as practical and efficient to the ends of justice and its prompt administration as the proposed equitable remedy. (*Tamalunis v. City of Georgetown* (1989), 185 Ill. App. 3d 173, 189-90, 542 N.E.2d 402, 413.) While lost wages and benefits may be susceptible of calculation and can be compensated monetarily, the loss of employment is more than the loss of a paycheck or benefits. For working people, such as plaintiff, a job helps define self-worth and personal identity. It gives life meaning and dignity. The loss of such values cannot readily be translated into a dollar amount, and once gone, they may be difficult to recapture. Indeed, some people never recover from the stigma and sense of defeat and failure unemployment may engender. For such individuals, a damage award is scant compensation.

■■ Even if we were to put such considerations aside, however, we would nevertheless be compelled to conclude that a legal remedy would not be adequate. In our view, the public policy against discharging employees for exercising their rights under the Workers' Compensation Act cannot be fully protected simply through after-the-fact damage actions. To give the policy full effect, employers must be absolutely prohibited from attempting discharge, and this can only be done if the courts are willing to issue orders restraining them from purging or threatening to purge from their employment rosters employees who have asserted their rights to workers' compensation benefits.

■■ Plaintiff has shown a likelihood of success on the merits. If preliminary injunctive relief had not issued, the burden on plaintiff would have been great. The source of his livelihood would have been lost. On the other hand, issuance of the injunction placed no legally cognizable burden on Illinois Power. The company was simply forced to do what the law requires. For the foregoing reasons, we must conclude that the circuit court did not abuse its discretion in granting plaintiff's motion for a preliminary injunction. Accordingly, the order granting that injunction is affirmed.

Affirmed.

RARICK, P.J., concurs.

JUSTICE WELCH, dissenting:

I respectfully dissent. I believe plaintiff has an adequate remedy at law in the event he is discharged by Illinois Power in retaliation for exercising his rights under the Workers' Compensation Act. Illinois courts have never before recognized a right to injunctive relief in retaliatory discharge cases, but have awarded plaintiffs monetary damages. I think money damages can adequately compensate plaintiff for loss of his employment rights and benefits and that he therefore has an adequate remedy at law, precluding injunctive relief.

The majority, relying on *U-Haul Co. v. Hindahl* (1980), 90 Ill. App. 3d 572, 413 N.E.2d 187, and *Eagle Books, Inc. v. Jones* (1985), 130 Ill. App. 3d 407, 474 N.E.2d 444, holds that plaintiff will suffer irreparable damages if the injunction is denied because violation of his protectable interest not to be discharged in retaliation for exercising his rights under the Workers' Compensation Act is sufficient to establish irreparable injury. However, in both those cases, irreparable injury was not presumed, as the majority concludes, but was found to exist because the damages plaintiffs did suffer, specifically loss of future busi-

ness, were not capable of adequate computation. Thus, the plaintiffs had no adequate remedy at law and would have been irreparably injured by the denial of an injunction.

In the instant case, plaintiff's damages are capable of adequate computation. Courts have long compensated for loss of employment rights and benefits and have had no trouble doing so. If, after hearing the merits of plaintiff's retaliatory discharge action, the court determines that plaintiff has established his case, plaintiff can be adequately and fully compensated in money damages for his loss of employment benefits.

The majority argues that plaintiff cannot be compensated monetarily for his loss of "self-worth and personal identity" and his loss of "meaning and dignity" in his life. I believe that an award of punitive damages, allowable in retaliatory discharge cases, goes a long way toward compensating for these "losses." In any event, such "damages" are speculative and proof of a speculative possibility of injury is not sufficient to justify an injunction. *In re Marriage of Strauss* (1989), 183 Ill. App. 3d 424, 429, 539 N.E.2d 808, 812.

Finally, the majority argues that no adequate legal remedy exists because the public policy against discharging employees for exercising their rights under the Workers' Compensation Act cannot be fully protected simply through actions for money damages. Allowing awards of punitive damages adequately protects the public policy. Indeed, punitive damages are awarded for that specific purpose.

Because plaintiff has an adequate remedy at law, I dissent.