ANNIE AUSTIN, Plaintiff-Appellant, v. ST. JOSEPH HOSPITAL, Defendant-Appellee.

First District (5th Division)   No. 1—87—3351

Opinion filed August 25, 1989.

PINCHAM, J., dissenting.

Stamos, Rimland, Halprin & Clark, of Chicago, for appellant.

Johnson & Drozdzik, Ltd., of Chicago, for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff appeals from an order of the circuit court of Cook County granting summary judgment (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005) for defendant.

We affirm.

On October 7, 1985, plaintiff, Annie Austin, filed a complaint against defendant, St. Joseph Hospital (St. Joseph), her former employer, alleging she was discharged from employment as a staff nurse in retaliation for filing a workers' compensation claim with the Illinois

Industrial Commission. Defendant denied the material allegations of the complaint.

On September 4, 1986, defendant moved for summary judgment. Defendant supported the motion with plaintiff's own deposition testimony, relevant portions of which we summarize below, and exhibits offered in conjunction therewith.

Plaintiff testified she was hired by St. Joseph on January 25, 1982. Plaintiff acknowledged that an employee handbook, in effect at the time she was discharged, embodied the employment agreement between plaintiff and St. Joseph. Plaintiff's signature on a receipt slip for the handbook appeared below an acknowledgement that the policies contained in the handbook were "explained or provided" to her. Her signature also appeared on a second similar receipt indicating her understanding that policies contained in the handbook were subject to change without notice.

Plaintiff testified that she injured her back on May 7, 1984, while lifting a patient out of bed. At some point following her injury, plaintiff filled out an injury report. She was examined by one of the physicians in the emergency room and was sent home. She was also sent home early on her next scheduled day of duty at the hospital. Plaintiff reported to work on her next scheduled day of duty thereafter and was examined by Dr. Shin. Sometime before being examined by Shin, plaintiff had been examined by Dr. Avora at Chicago Health Service upon her father's referral. Plaintiff was placed on "light duty" status at the hospital.

During the last two weeks of May, plaintiff was also examined by Dr. Hyman, a staff physician at St. Joseph. Hyman released her for work, but limited her activities to duties which did not require her to lift more than five pounds. After Hyman's release, she spoke to her supervisor, Ellen O'Mara, about the possibility of returning to work with those restrictions, but was told no such work was available.

For approximately five days in June 1984, plaintiff was hospitalized at St. Joseph. Plaintiff was treated there by Hyman, Dr. Horwitz, a neurologist, and Dr. Scott, an internist. However, plaintiff testified, because she was not receiving adequate attention, she requested a transfer to Rush-Presbyterian-St. Luke's Hospital (Rush), where plaintiff's internist, Dr. Williamson, was affiliated. Plaintiff stated St. Joseph initially refused to pay for the transfer. Plaintiff stated that when she arranged, independently through her sister, to hire an ambulance for that purpose, defendant acquiesced. She stated that Hyman told her that if she left St. Joseph without being transferred, she would lose her "workers'."

Plaintiff stated that after being examined at Rush by a physical therapist, she developed the impression that she would be under the care of the physical therapist for two to three weeks "based on what [was] uncovered." Plaintiff stated that later that day she spoke with O'Mara and told O'Mara what the therapist had discovered. Plaintiff stated that the physical therapist thereafter "changed her plans" and decided she did not need to see plaintiff for two to three weeks. Plaintiff stated the therapist "couldn't or wouldn't" explain her reasons. Plaintiff also stated that during her hospitalization at Rush, St. Joseph wanted to refer her to a particular neurologist but that she "refused him" because she "felt he may have had a bias." She did not recall the physician's name.

Plaintiff acknowledged she believed "very strongly" that her refusal to see the physician referred by St. Joseph somehow affected the treatment she received from Williamson. Plaintiff explained that when she arrived at Rush, there was a "discrepancy" between the treatment she expected and the treatment she received.

Plaintiff stated that she began to receive workers' compensation payments retroactively in May or June, but had received no benefits between the period of her hospitalization at St. Joseph and her stay at Rush. Plaintiff stated that after she was discharged from Rush in July 1984, she complained about not receiving benefits during that time. Plaintiff also stated that on July 6, 1984, she had filed an application for adjustment of her workers' compensation claim with the Illinois Industrial Commission. Plaintiff acknowledged, however, that she did receive the entirety of benefits due. Plaintiff's benefits terminated in October of 1984.

Plaintiff testified that following her discharge from Rush, she continued to receive treatment from Williamson and a treatment group at Cook County Hospital. Plaintiff paid for that treatment herself.

In August 1984, she was examined by Dr. Leonard Smith at the request of either St. Joseph or the insurance carrier associated with the workers' compensation benefits. Following that examination on October 15, 1984, plaintiff spoke with Pam Linke of St. Joseph over the telephone about returning to work. Plaintiff was advised that Smith had determined plaintiff could return to work and that she was to do so on October 22, 1984. Plaintiff was also advised that her workers' compensation benefits would stop on October 19, 1984. Plaintiff told Linke that her physicians had not yet released her to return to work but told her she could return to work if she did not have to lift anything and if she could control the amount of standing or sitting required.

Plaintiff testified that later that month, she received a letter from Janet Poeppelman, St. Joseph's risk manager, requesting that plaintiff schedule a date for her return to work. Plaintiff stated that after receiving the letter from Poeppelman, she attempted to reach her by telephone, but was told that Poeppelman was on vacation. Plaintiff sent a certified letter dated October 25, 1984, to Poeppelman in response indicating that plaintiff had elected to obtain an additional medical opinion.

On Saturday, November 3, 1984, plaintiff received a telegram notifying her of termination of her employment for the failure to report to work on three consecutive dates: October 29, 30, and 31, 1984, in conjunction with hospital policy contained in the St. Joseph handbook. On the following Monday, she called Linke. Plaintiff told Linke that she was not able to return to work on a full-time basis and stated that, on two of the three dates she had not gone to work, she had been scheduled for physical therapy at Rush.

Plaintiff stated that, after receiving the notice of termination, she filled out a grievance report with St. Joseph. Thereafter, she met with Linke, O'Mara, and Janet Burdulis on November 13, 1984. Plaintiff's grievance was eventually rejected.

Plaintiff also filed charges with the Illinois Division of Human Rights. Those charges were dismissed on December 30, 1985.

In response to questions concerning whether plaintiff had ever been told by anyone associated at St. Joseph that they were unhappy that she had filed a workers' compensation claim, plaintiff stated she did not recall. Plaintiff did state that "a couple of girls" had mentioned to her that they had heard plaintiff had filed a complaint against St. Joseph. Plaintiff stated those individuals were Jane Babula and two women, Margie and Helen, whose last names plaintiff could not recall.

Throughout plaintiff's deposition, defendant's counsel offered, and plaintiff identified, numerous documents pertaining to questions posed to plaintiff. The exhibits included a copy of the St. Joseph Hospital Employee Handbook; a letter from Smith to St. Joseph's insurance carrier, dated August 18, 1984, stating plaintiff was able to perform her regular work activities without restriction; Poeppelman's letter to plaintiff, dated October 19, 1984, stating that the hospital was informed of plaintiff's release and that plaintiff was to schedule a date to return to work; plaintiff's letter to Poeppelman, dated October 25, 1984, stating that plaintiff planned to seek an additional medical opinion from an independent physician and that she would contact the hospital thereafter; and the telegram dated November 2, 1984, terminating plaintiff's employment.

The record reflects that prior to the scheduled hearing date on defendant's motion, plaintiff moved to strike defendant's motion for summary judgment. Plaintiff argued that the motion for summary judgment was insufficient to demonstrate that no issue of fact existed because it was based solely on plaintiff's deposition testimony and attached exhibits.

At the hearing on May 20, 1987, the trial judge refused to consider plaintiff's motion because plaintiff's counsel did not appear in court. However, the trial judge permitted defendant's counsel to argue the motion for summary judgment and ruled for defendant. Plaintiff's subsequent motion to reconsider was denied on October 8, 1987. This appeal followed.

OPINION

On appeal, plaintiff contends the trial court erred in denying plaintiff's motion to strike, and thereby considered incompetent evidence in ruling on St. Joseph Hospital's motion for summary judgment. Specifically, plaintiff points out that the motion for summary judgment was based solely on plaintiff's deposition testimony. It is plaintiff's position that, as plaintiff could not competently testify to defendant's state of mind, the motion for summary judgment should not have been entertained without defendant asserting affirmative matter to establish its reason for discharging plaintiff. Similarly, plaintiff argues St. Joseph's motion was not properly supported by the exhibits attached to the deposition because plaintiff could not competently testify as to their content. Notwithstanding the contention that defendant's motion for summary judgment should have been stricken, plaintiff argues a material issue of fact existed as to defendant's motive in discharging plaintiff and that, therefore, summary judgment was improper.

Initially, we note trial courts may entertain motions by defendants for summary judgment where the only evidence considered is plaintiff's own deposition testimony. (See, *e.g., Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 473 N.E.2d 444.) Further, when challenged by a motion for summary judgment, a plaintiff who has alleged a cause of action for retaliatory discharge is required, as in other cases, to present some factual basis that would arguably entitle plaintiff the relief requested. See *Fuentes v. Lear Siegler, Inc.* (1988), 174 Ill. App. 3d 864, 529 N.E.2d 40.

In view of the above, we cannot conclude the trial court erred in denying plaintiff's motion to strike St. Joseph's motion for summary judgment. First, the motion was proper despite any suggestion in plaintiff's argument that St. Joseph's motion could not have been sup-

ported by reference to plaintiff's deposition testimony alone. Second, we find it unnecessary to determine whether exhibits establishing defendant's reason for discharging plaintiff, referred to in conjunction with plaintiff's deposition, could have been properly considered by the trial court. As we discuss below, even apart from the exhibits, plaintiff has failed to set out any evidence sufficient to raise an inference that plaintiff was discharged for exercising her right to seek workers' compensation benefits.

■ Because it is the employer's motive in firing an employee which is ultimately at issue in cases for retaliatory discharge, and because motive presents a question of fact, Illinois courts recognize that such cases should not be readily subject to disposition pursuant to motions for summary judgment. (*Fuentes v. Lear Siegler, Inc.* (1988), 174 Ill. App. 3d 864, 529 N.E.2d 40.) Summary judgment, nevertheless, is appropriate in the absence of that the plaintiff-employee was discharged in conjunction with an assertion of a claim for workers' compensation benefits. *Fuentes*, 174 Ill. App. 3d 864, 529 N.E.2d 40.

■ After carefully considering the allegations in plaintiff's complaint and plaintiff's deposition testimony, we conclude the record falls short of containing facts such as would support an inference that plaintiff's discharge was in any way connected to workers' compensation benefits. We do not determine an inference arises from plaintiff's testimony that "a couple of girls," actually, fellow nurses of plaintiff, had remarked that they were aware plaintiff had filed a workers' compensation claim. Nor do we determine plaintiff's testimony that Hyman had told her she would lose her "workers'" if she was transferred to Rush support an inference of retaliatory discharge. As to that testimony, we note that, in fact, plaintiff stated she received the benefits to which she was entitled. Instead, the only inference which reasonably may be drawn from the record is that plaintiff was discharged after failing to return to work after it was determined that she was fit to do so. That inference is insufficient to raise a question of fact here. Reversal of the circuit court's grant of summary judgment under such circumstances is not justified.

We therefore affirm the judgment of the circuit court.

Affirmed.

MURRAY, P.J., concurs.

JUSTICE PINCHAM, dissenting:
I dissent. There existed a genuine issue of material fact which pre-

cluded the valid entry of summary judgment against plaintiff and in favor of the defendant. Moreover, the trial court relied on grossly incompetent evidence in granting the defendant's motion for summary judgment.

Plaintiff, Annie F. Austin, a nurse, filed against defendant, St. Joseph Hospital, her former employer, a two-count complaint which alleged that she was discharged from her employment at St. Joseph Hospital in retaliation for her filing a claim with the Illinois Industrial Commission for her work-related back injury. Defendant simply denied the allegations of plaintiff's complaint.

Plaintiff was deposed and her deposition testimony established the following: Plaintiff was hired as a staff nurse by defendant hospital on January 25, 1982. The contract of employment between plaintiff and defendant hospital was set forth in an employee handbook, which plaintiff acknowledged receiving. The provisions in the handbook were in effect in November 1984, when plaintiff was discharged.

Plaintiff was injured on May 7, 1984. She filled out an incident report. Plaintiff was examined by Dr. Shin, one of defendant's health care physicians, and was placed on "light duty." Later, plaintiff was treated by Dr. Hyman, a physician associated with defendant hospital during the time she was hospitalized there in June 1984.

During her hospitalization at defendant hospital, plaintiff requested to be transferred to Rush-Presbyterian-St. Luke's Hospital (Rush), because she was not receiving acceptable treatment from the defendant hospital staff. Because defendant refused to pay for the transfer, plaintiff called her sister to get an ambulance to take her to Rush. When defendant learned of those arrangements, defendant agreed to transfer her with the stipulation that she accept treatment from a physician referred by defendant. Plaintiff, however, declined to accept treatment from that referred physician because she felt he would not perform an objective examination. Dr. Hyman said if she left without defendant transferring her, she would lose her "workers' " (workers' compensation benefits). When plaintiff called her sister for the ambulance, Dr. Scott arranged for her transfer to Rush.

Plaintiff began receiving workers' compensation payments retroactively in May or June. After she was discharged from Rush, plaintiff complained about not receiving certain workers' compensation payments.

On July 6, 1984, plaintiff's attorney filed an application for adjustment of plaintiff's workers' compensation claim. Plaintiff continued to receive treatment from Dr. Wayne Williamson and a treatment group at Cook County Hospital following her discharge from Rush.

In August 1984, plaintiff was examined by Dr. Leonard Smith at the request of either defendant or the insurance carrier associated with the workers' compensation benefits, and she received Dr. Smith's report. After she was examined by Dr. Smith plaintiff received a letter from Janet Poeppelman, defendant's risk manager, late in October 1984, requesting that plaintiff contact her office to schedule a return to work date. Prior to receipt of that letter, plaintiff had a telephone conversation on October 15 with Pam Linke, a head nurse, about returning to work. Plaintiff was aware that Dr. Smith's opinion was that she was able to report to work and that she was to report to work on Monday, October 22, 1984, and that her workers' compensation payments would stop on October 19. Plaintiff's doctors told her that she could return to work as long as she did not have to do any lifting or if she was able to control the sitting and standing that she had to do.

After receiving the late October letter from Poeppelman, defendant's risk manager, plaintiff telephoned defendant and spoke to Peggy, who worked in the risk management department, and asked to speak to Poeppelman, who was on vacation. Plaintiff also sent a certified letter dated October 25, 1984, to Poeppelman in response to Poeppelman's letter. Plaintiff told Dr. Wayne Williamson about Poeppelman's letter when she next saw him, and she also told him of her termination from defendant hospital, i.e., that she had received a telegram terminating her employment on Saturday, November 3, 1984.

Plaintiff called Linke because she was surprised by the letter. She told Linke that she was not able to return to work full duty. Linke responded that she was instructed to send the letter because plaintiff was not at work on October 29 or the 31st. During October 29, 30 and 31, 1984, the three days plaintiff did not report for work, plaintiff was scheduled for two days of physical therapy at Rush.

After receiving the notice of discharge, plaintiff contacted Donna Wilke regarding using defendant's grievance procedure and filled out a grievance report. Thereafter, plaintiff met with Linke, O'Mara and Janet Burdulis on November 13, 1984. Plaintiff did not receive a telegram dated December 3, 1984, advising plaintiff that her grievance procedure was scheduled for December 7, 1984, because she was then out of town at Mayo Clinic in Rochester, Minnesota, from December 2 through 9, 1984. On December 7, 1984, while she was in Minnesota, she telephoned her mother, who told her that she had received the telegram. Plaintiff told her mother to telephone defendant concerning the grievance matter.

Before going to Mayo, plaintiff spoke to Burdulis on three occasions by phone regarding scheduling the grievance proceeding. Burdu-

lis cancelled the date they had agreed on but never contacted her thereafter regarding a different date. Plaintiff told Burdulis to get back to her regarding scheduling a different date because plaintiff had scheduled "some medical appointments." Plaintiff did not say she was going to Mayo Clinic.

When she spoke to Burdulis after she arrived back from Mayo Clinic, she was told that the grievance procedure had taken place without her. Burdulis told plaintiff that because she had not appeared, she forfeited her right to a grievance hearing. Plaintiff later spoke to Joseph Bucolo regarding scheduling another grievance hearing date.

Plaintiff stated that she did not recall being told by anyone associated with defendant that they were unhappy that plaintiff had filed a workers' compensation action and that she had no contact with any individual in that regard. Plaintiff did, however, receive feedback from "a couple of girls," Jane Babula, Margie and Helen.

Defendant moved for summary judgment and attached to the motion plaintiff's deposition testimony and the deposition exhibits. Plaintiff filed a motion to strike defendant's summary judgment motion. The basis of plaintiff's motion to strike defendant's motion for summary judgment was that defendant's motion was insufficient on its face to demonstrate that no issue of fact existed, in that the only evidence relied on by defendant in support of its motion for summary judgment were plaintiff's deposition testimony and attached exhibits.

At the hearing of defendant's motion for summary judgment on May 20, 1987, the court struck plaintiff's motion to strike defendant's motion for summary judgment simply because plaintiff's counsel was not present to argue the motion. The court allowed defendant's counsel, however, to present his argument, and ruled in defendant's favor and granted defendant's motion for summary judgment. Plaintiff's subsequent motion to reconsider was denied and plaintiff filed a timely notice of appeal.

Plaintiff argues that defendant's motion for summary judgment should have been stricken because defendant could not and did not establish, through plaintiff's deposition testimony and attached exhibits, defendant's intent in terminating plaintiff's employment. Plaintiff also argues that defendant could not rely on the exhibits attached to the deposition because plaintiff could not competently testify as to them. Essentially, plaintiff's argument is that defendant did not present any evidence, in the form of affidavits or otherwise, as to the reason for plaintiff's termination.

Plaintiff relies on *Cunningham v. Addressograph Multigraph Corporation-Bruning Division* (1980), 87 Ill. App. 3d 396, 409 N.E.2d 89.

Plaintiff also argues that the pertinent exhibit attached to her deposition testimony, particularly the telegram informing plaintiff that her termination was because she violated hospital absenteeism policy, was inadmissible hearsay. In *Cunningham*, plaintiff filed an action against defendant employer for retaliatory discharge alleging his termination was based on anticipation of plaintiff filing a claim for workers' compensation benefits. Defendant moved for summary judgment with supporting affidavits of defendant's plant personnel manager that plaintiff's termination was due to plaintiff's violation of the defendant's call-in policy. Plaintiff filed counteraffidavits admitting that, although he had violated the policy, he thought the violation would be waived. The trial court granted summary judgment for defendant.

On appeal, the court of review in *Cunningham* concluded that defendant's affidavits reasonably implied that plaintiff's discharge was for violation of defendant's call-in policy and that plaintiff's admission corroborated that fact. The court noted, however, in affirming the summary judgment for defendant in *Cunningham* that plaintiff's affidavits could not overcome evidence of defendant's intent in terminating plaintiff, established by defendant's affidavits, because plaintiff could not competently establish, through his own affidavits, defendant's intent. The *Cunningham* court held:

> "From the foregoing summary of the pleadings and affidavits it can be seen that the central issue in this case is the defendant's intent or motive in discharging plaintiff. We have concluded that the defendant's affidavits reasonably imply that the discharge was for violation of the company's call-in policy and that this is corroborated by plaintiff's admission that he violated that policy.
>
> We have further concluded that plaintiff's affidavits do not competently counter those of the defendant since *plaintiff could not competently testify as to the defendant's state of mind. No facts alleged by pleadings or affidavit would support an inference of defendant's state of mind.*" (Emphasis added.) 87 Ill. App. 3d at 398.

Plaintiff quite correctly points out that in *Cunningham*, unlike in the instant case, defendant there moved for summary judgment with supporting affidavits, significantly absent in the instant case. The requisite relevant inquiry, therefore, is whether the telegram dated November 2, 1984, and attached as an exhibit to plaintiff's deposition testimony, which stated that plaintiff's discharge was for her failure to report to work for three days, was properly considered by the trial court in granting defendant summary judgment.

It is plaintiff's position that defendant provided no proper foundation for the telegram, or other letters allegedly written by defendant, to be admitted as substantive evidence during plaintiff's deposition. Plaintiff states that inasmuch as the documents were only identified by plaintiff in her deposition, that mere identification is grossly insufficient to establish a proper foundation for the admission of the telegram into evidence as substantive evidence for the truth of the matters asserted therein, because plaintiff could not and did not testify as to the telegram's contents, namely, defendant's intent in terminating plaintiff, as the aforequoted language of *Cunningham* clearly holds.

Plaintiff's argument is persuasive. The letters and telegrams were inadmissible hearsay (*Baehr v. Health & Hospital Governing Comm'n* (1980), 86 Ill. App. 3d 43, 407 N.E.2d 817), which could not be considered as competent evidence in granting defendant's motion for summary judgment (*Hendricks v. Deterts* (1973), 13 Ill. App. 3d 976, 301 N.E.2d 625). Here, defendant did not present any affidavits that would provide a basis for admission of the contents of the letters, or to establish defendant's intent in terminating plaintiff. Without such an affidavit, the admission of the telegram as evidence of defendant's intent as substantive evidence was improper and the court's reliance thereon was similarly inappropriate.

A question of fact therefore existed which precluded summary judgment. Other than defendant's simple denial that plaintiff was terminated in retaliation for filing a workers' compensation claim, defendant presented no evidence to disprove plaintiff's allegations. While plaintiff's deposition testimony provides little proof that she was fired for that reason, such proof would almost be impossible from plaintiff's lips inasmuch as it is defendant's intent which forms the basis for plaintiff's action of retaliatory discharge. For that reason summary judgment was particularly inappropriate, in that the factual issue was the defendant's intent. (*Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill. App. 3d 294, 484 N.E.2d 841.) Without any affidavit from defendant, the defendant's intent in discharging plaintiff was a genuine issue of fact to be determined at trial.

The majority in the instant case improperly affirms the summary judgment against plaintiff in favor of the defendant simply and only because of its ill-founded and unsupported conclusion that plaintiff's deposition testimony did not establish that plaintiff's discharge by defendant was retaliatory, and without any indication from any source whatever that plaintiff's deposition was the only evidence on the issue available to plaintiff, or that there was no other evidence on the issue available to plaintiff, and in the total absence of any evidence that

plaintiff's discharge was not retaliatory, as plaintiff alleged it was.

On the state of the record before us, plaintiff was clearly entitled to her day in court on an evidentiary hearing and a determination of the merits of the allegations of her complaint against the defendant and the defendant's answer thereto. The trial court therefore erred in granting the defendant's motion for summary judgment. Accordingly, I dissent.