MICHAEL PAZ, Plaintiff-Appellant, v. COMMONWEALTH EDISON, Defendant-Appellee.

Second District    No. 2—99—0028

Opinion filed June 27, 2000.—Rehearing denied July 27, 2000.

COLWELL, J., dissenting.

Richard J. Smith, of Sullivan, Smith, Hauser & Noonan, Ltd., of Waukegan, for appellant.

John W. Bell, Michael P. Siavelis, and Mindy Kallus, all of Johnson & Bell, Ltd., of Chicago, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Michael Paz, appeals from the jury's verdict in favor of defendant, Commonwealth Edison Company (ComEd). We affirm.

Plaintiff was an employee of ComEd when he was injured on the job. On August 16, 1989, a large piece of metal fell from an overhead crane and landed on the grate upon which plaintiff was standing. Plaintiff was thrown against a railing and struck on the knees by the piece of metal. During the next two years, plaintiff on occasion returned to work part-time and performed light-duty tasks. Plaintiff was paid in excess of $51,000 in workers' compensation benefits during the period of his disability, and medical bills of almost $25,000 were also paid. Eventually, plaintiff and ComEd settled on total workers' compensation benefits of $115,000, which was approved by the Industrial Commission. Plaintiff was examined by several doctors during this period, including his personal physician and a doctor employed by ComEd. Plaintiff's ability to work was often disputed by these doctors. Eventually, on the morning of November 7, 1991, plaintiff was examined by Dr. Fitzpatrick, who was employed by ComEd. The parties dispute whether Fitzpatrick at that time released plaintiff to work full-time. Plaintiff did not report to work on November 7, and he was terminated that day.

Plaintiff filed suit, alleging retaliatory discharge, and his second amended complaint proceeded to a jury trial after the court denied motions for summary judgment and judgment on the pleadings. The

jury returned a verdict in ComEd's favor. Plaintiff's posttrial motion was denied. This appeal followed.

■ Plaintiff first contends that he was entitled to summary judgment on the issue of liability. However, an order denying a motion for summary judgment is not reviewable after an evidentiary trial, as any error in the denial is merged in the subsequent trial. *Contract Development Corp. v. Beck*, 255 Ill. App. 3d 660, 664 (1994). Therefore, we will address this contention in the context of whether the jury's verdict was against the manifest weight of the evidence. A verdict is against the manifest weight of the evidence only where conclusions opposite those reached by the jury are clearly evident, plain, and undisputable. *Moore v. Anchor Organization for Health Maintenance*, 284 Ill. App. 3d 874, 880 (1996).

■ The general rule in Illinois is that an at-will employee may be discharged by the employer at any time and for any reason. *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 17-18 (1998). (Although plaintiff herein was a union member, the union contract was not involved in this case and the plaintiff was an at-will employee for all relevant purposes in this litigation.) However, our supreme court recognized a limited exception to this rule in *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172 (1978), when it determined that a plaintiff who was terminated for pursuing workers' compensation benefits could bring an action for retaliatory discharge against the former employer. See *Buckner*, 182 Ill. 2d at 18. The supreme court has deflected many attempts to expand this tort and has maintained retaliatory discharge as a limited and narrow exception to the general rule of at-will discharges. See *Buckner*, 182 Ill. 2d at 18-20. To state a cause of action for retaliatory discharge, a claimant must allege that (1) he was an employee of the defendant before or at the time of the injury; (2) he exercised some right granted by the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1996)); and (3) his discharge was causally related to the exercise of that right under the Act. *Clark v. Owens-Brockway Glass Container, Inc.*, 297 Ill. App. 3d 694, 697 (1998). *The element of causation is not met if the employer has a valid, nonpretextual basis for discharging the employee. Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 160 (1992). Excess absenteeism, even caused by a compensable injury, may be a valid reason for dismissal, and an employer is under no obligation to retain an at-will employee who is medically unable to return to his assigned position. *Hartlein*, 151 Ill. 2d at 159-60.

■ Here, there is no question that plaintiff was employed by ComEd at the time of the injury or that plaintiff exercised his right to benefits under the Act. However, the jury concluded that plaintiff's

discharge was not causally related to his exercise of rights under the Act. This conclusion was not against the manifest weight of the evidence. Plaintiff was discharged more than two years after he was injured and began receiving benefits under the Act. He had not reported to work for approximately five months at the time of his firing and did not report on November 7, the date on which ComEd discharged him after determining that the plaintiff could not or would not do full-time work. ComEd only had eight-hour-a-day restricted-duty work available. Plaintiff refused to work eight hours a day. The evidence does not so overwhelmingly favor plaintiff that no contrary verdict could stand. Therefore, the jury's verdict was not against the manifest weight of the evidence.

Plaintiff cites *Clark* as controlling. In that case, Clark injured her back on March 3, 1991, and began receiving temporary total disability payments on March 13. After initially agreeing with Clark's family physician's course of treatment, the employer, Owens-Brockway, "suspected that Clark was malingering." *Clark*, 297 Ill. App. 3d at 696. On May 23, 1992, Clark was videotaped mowing her lawn. She was suspended on June 1 and was fired, after a hearing, on June 3. In Clark's suit for retaliatory discharge, the trial court granted summary judgment in Clark's favor on the issue of liability. The appellate court affirmed, concluding that summary judgment in Clark's favor "was proper because her discharge was directly and proximately related to her claim for benefits." *Clark*, 297 Ill. App. 3d at 698. The court stated that "[a]n employer may discharge an injured employee who has filed a workers' compensation claim as long as the reason for the discharge is wholly unrelated to the employee's claim for benefits under the Workers' Compensation Act." *Clark*, 297 Ill. App. 3d at 698. However, "[a]n employer may not discharge an employee on the basis of a dispute about the extent or duration of a compensable injury." *Clark*, 297 Ill. App. 3d at 699. The court found as *un*disputed the fact that Clark was discharged because Owens-Brockway believed that her *claim for benefits* was exaggerated. *Clark*, 297 Ill. App. 3d at 698.

The dissent also relies on *Clark*, arguing that, because "a dispute over whether plaintiff could work eight-hour days existed," ComEd discharged plaintiff on the basis of that dispute. 314 Ill. App. 3d at 607. However, we find *Clark* distinguishable. *Clark* involved the review of a grant of summary judgment in an uncontested factual scenario; the cause did not go to verdict. The *Clark* court found that the evidence that Clark's discharge was directly related to her claim for benefits was "undisputed." In the case before us, the evidence was disputed. ComEd has presented evidence that plaintiff was fired for not returning to work after he had been released to work full-time

*and* that it had no part-time work for plaintiff. Plaintiff and the dissent would have this court take the *Clark* holding that an employee may not be discharged "on the basis of a dispute about the extent or duration of a compensable injury" (*Clark*, 297 Ill. App. 3d at 699) to mean that any time an employee is unable to return to work or refuses to return because his personal physician advises against it the employer cannot do anything about it, as this would involve a dispute about the extent or duration of the employee's injury. This is not the law, and we will not make it so. Plaintiff and the dissent attempt to take a factual issue (the dispute over plaintiff's ability to work eight-hour days) and turn it into a question of law inuring to the benefit of the plaintiff. The evidence against the employer in *Clark* was *un*disputed. Such is not the case here. To that extent, *Clark* is inapplicable and distinguishable.

Effectively, the dissent takes a dispute as to a fact, causality, cites the undisputed fact that the workers' compensation claim was pending, and determines that, as a matter of law, causality has been proved. Under the logic of the dissent, an employer could not even raise facts alleging termination for any other reason. If a dispute regarding the nature and extent of the plaintiff's injury exists, an employer could not present evidence that the plaintiff was terminated for sexually harassing another employee or stealing inventory, since, according to the dissent, the dispute over the nature and extent of the injury would be, as a matter of law, the cause of the termination. Many facts may exist that would tend to prove several different motives for termination. Because motive is a question of *fact*, not law, summary judgment is generally inappropriate in retaliatory discharge cases even if it were capable of review. See *Austin v. St. Joseph Hospital*, 187 Ill. App. 3d 891, 897 (1989). The dispute over plaintiff's ability to return to full-time employment, in this case, is just one fact to be considered by the fact finder. Whether plaintiff's discharge was retaliation for exercising his rights under the Act or whether the discharge was ComEd's lawful termination of an employee unable to fulfill his duties is a question of fact to be decided after viewing *all* the evidence. The jury found in favor of ComEd, and we believe the decision was not against the manifest weight of the evidence.

The dissent's view, if adopted, would remove "retaliatory" from "retaliatory discharge" and would, in essence, reverse *Hartlein*. Under the dissent's logic, an employer would be better off never discussing an injured employee's medical situation and immediately giving the employee an ultimatum of "Return to work or we will need to hire a replacement to do your job." *Hartlein*, decided by our supreme court, does not place employers and employees in such a predicament. An

employer is *not* obligated to retain an at-will employee who is medically unable to return to his assigned position. *Hartlein*, 151 Ill. 2d at 159. In its own recitation of the facts, the dissent acknowledges that plaintiff was informed that "the only work ComEd had available for plaintiff was eight-hour-a-day restricted-duty work. Again citing Dr. Larson's restrictions, plaintiff refused to work eight-hour days and consequently did not return to work for ComEd." 314 Ill. App. 3d at 605. This fact places the case directly under the holding of *Hartlein*.

The dissent attempts to distinguish *Hartlein* by arguing that it was undisputed that the plaintiff in *Hartlein* was medically unable to ever return to his former position in the company, while plaintiff's ability to return to work in this case was medically disputed. Drawing this distinction, the dissent then argues that ComEd "did not have the right to terminate plaintiff based on a determination that he was medically unable to return to work." 314 Ill. App. 3d at 608. However, this is a distinction without a difference. Employers may act on the basis of their employee's disabilities. *Hartlein*, 151 Ill. 2d at 160. *Hartlein* cited with approval *Slover v. Brown*, 140 Ill. App. 3d 618 (1986), in which the appellate court found in favor of an employer that did not employ an injured employee who attempted to return to work after a 22-month injury recuperation. Excess absenteeism, *even if caused by a compensable injury*, may properly be the basis for firing an employee. *Hartlein*, 151 Ill. 2d at 160. Absenteeism does not imply that the injured employee will never be able to return to his current job; it means merely that the employee is absent from work *currently*. The supreme court did not say that the undisputed inability to return to work in the future can be the basis for termination. A plaintiff's inability to be at work and do his job, whether the reason for that inability is disputed or not, is a proper basis for termination.

The dissent argues that only the Industrial Commission (Commission) can determine whether a plaintiff is capable of returning to work; an employer must await such a determination before it can demand an employee's return to work and terminate the employee for failure to do so. However, the Commission's jurisdiction is limited to "[a]ll questions arising under this Act." See 820 ILCS 305/18 (West 1996). Questions regarding the compensation due to an injured employee because of the injury shall be addressed only by the Commission. However, an employer's need to have an employee who is able to fulfill the duties of employment and an employee's ability to fulfill his duties of employment are not questions within the Commission's competence or jurisdiction.

Furthermore, the dissent's reliance on the arbitration provided in section 19(p) of the Act (820 ILCS 305/19(p) (West 1996)) is completely

misplaced. 314 Ill. App. 3d at 607-08. Section 19 of the Act provides for arbitration of claims for temporary or permanent disability, and the payment of compensation may be ordered. See 820 ILCS 305/19(b) (West 1996). The arbitrator's order is to be "conclusive as to all other questions *except the nature and extent of said disability.*" (Emphasis added.) 820 ILCS 305/19(b) (West 1996). Nowhere does section 19 give an arbitrator the power to determine an employee's current availability for work or the employer's right to discharge the employee; the arbitrator's findings as to the nature and extent of the injury are not even conclusive. Submission to arbitration is neither required nor of any value, as the question of an employee's continued employment is not properly before the Commission or an arbitrator.

We also fail to see the significance that the dissent places on the fact that ComEd and plaintiff dispute plaintiff's ability to return to work full-time. If both ComEd and plaintiff agreed that plaintiff was unable to do his job, presumably ComEd would be free to terminate plaintiff, as there would be no dispute as to the nature and extent of plaintiff's injury. Plaintiff here acknowledges that he is unable to perform the duties of his job. Whether ComEd agrees with him or not is not relevant. The dispute about his ability to perform should not be the focus; his actual inability to perform should be.

The dissent also raises the issue of vocational rehabilitation under the Act. 314 Ill. App. 3d at 608-09. However, plaintiff never raised this issue in the trial court, and it is not an appropriate ground for resolution or reversal.

Plaintiff argues that, under the Act, an injured employee has the right to select his own physician and that ComEd "obliterated" this right by compelling plaintiff to ignore the medical advice of his chosen doctor and instead submit to the decision of the company doctor. However, as we have already stated, an employer is not obligated to retain an at-will employee who is medically unable to return to his position, nor is an employer obligated to reassign such an employee to another position. See *Hartlein*, 151 Ill. 2d at 159. To accept plaintiff's argument would be to require all employers to accept an employee's excuse from his private physician without question and without recourse if the personal physician's diagnosis or treatment makes the employee unable to return to his position. An employer is not required to continue employing an injured employee; certainly, it is not required to accept his doctor's treatment plan indefinitely.

Plaintiff argues that an action for retaliatory discharge is not limited to a discharge for the act of filing a workers' compensation claim but includes termination for exercising rights to medical care. Assuming, *arguendo*, this contention is true, our analysis and conclu-

sion are not altered. Plaintiff was never denied the right to seek medical care of his choosing. Plaintiff received over two years of such care. However, the employee's right to seek medical care does not require the employer to retain the employee forever. Plaintiff's argument would give employees and their personal physicians power to keep the nonworking employee on the payroll indefinitely. As we have seen, an employer is not required to keep an injured employee on the payroll indefinitely, even if the injury was work-related. ComEd was not required to allow plaintiff to recuperate at home or to work part-time hours indefinitely. The plaintiff fails to realize that the jury found against him and, under the evidence, the jury could have found a good-faith motive for termination.

■ Plaintiff next contends that the manifest weight of the evidence showed that he was terminated before he could return to work on November 7 and that the doctor's examination was simply a prearranged prelude to terminating him for asserting his workers' compensation rights. Plaintiff testified that he was picked up at approximately 8:30 to 9 a.m. on the morning of November 7, 1991, by Langston Hughes and Ed Chapman and taken to an appointment with Dr. Fitzpatrick at the ComEd medical department. He was never told to return to work and, after eating lunch with Hughes and Chapman, was dropped off at his home, where the termination letter from ComEd awaited him. Hughes, a ComEd foreman, testified that he picked plaintiff up between 8 and 8:30 a.m. and drove him to the medical appointment. He never told plaintiff to return to work. After lunch, he dropped off plaintiff between 12 and 1 p.m. Chapman, a union representative, testified that he never heard anyone direct plaintiff to return to work that day. After lunching with plaintiff at about 11:30 a.m., Chapman returned to work at about 12:30 p.m. Dr. Fitzpatrick testified that he examined plaintiff on November 7 and that he communicated with ComEd his recommendation that plaintiff return to work. Fitzpatrick did not tell plaintiff that he must return to work that day, as someone else would have told plaintiff in another room. A copy of a return-to-work slip, recommending restricted duty on a full-time basis and time-stamped at 8:27 a.m. on November 7, was entered into evidence. Charles Schumann, manager of the ComEd Waukegan station, testified that he signed plaintiff's termination letter in the morning of November 7, after he was informed that plaintiff had been released to return to work and had not reported to the Waukegan station. The termination letter was delivered to plaintiff's house at 12:39 p.m.

It is the jury's function to weigh contradictory evidence, judge the credibility of the witnesses, and draw ultimate conclusions as to the

facts of a case. *Moore*, 284 Ill. App. 3d at 880. A reviewing court may not substitute its judgment for that of the trier of fact merely because different conclusions may be drawn from the evidence. *Moore*, 284 Ill. App. 3d at 880. A verdict will be set aside and a new trial ordered only when the jury's verdict is against the manifest weight of the evidence, *i.e.*, where conclusions opposite those reached by the jury are clearly evident, plain, and indisputable. *Moore*, 284 Ill. App. 3d at 880.

We do not conclude that the evidence in this case leads only to the conclusion opposite of that reached by the jury. Much of the testimony on both sides is vague as to the time that events took place. The credibility of the witnesses is of utmost importance here, as the parties argue over whether plaintiff was told to return to work. The only physical evidence on this point, the return-to-work slip, is time-stamped at 8:27 a.m., certainly early enough for plaintiff to have returned to work if he had received it. The evidence is contradictory and not so weighted in plaintiff's favor that this court should overturn the jury's verdict as against the manifest weight of the evidence. We, therefore, decline to do so.

■ Plaintiff next contends that ComEd violated the Act by compelling plaintiff to submit to multiple examinations by Dr. Fitzpatrick. However, plaintiff fails to inform us how examinations by the company medical staff constitute retaliatory discharge. An employee entitled to receive disability payments is required to submit himself for examination by a qualified doctor, at the employer's request and expense, to determine the nature and extent of the employee's injury and to ascertain the amount of compensation that may be due the employee from time to time for disability. 820 ILCS 305/12 (West 1998). The employee's refusal to submit to such an examination leads to the suspension of the employee's compensation payments. 820 ILCS 305/12 (West 1998); see also *King v. Industrial Comm'n*, 189 Ill. 2d 167 (2000). Thus, ComEd had a statutory right to request the examinations, and plaintiff had a statutory duty to submit to them. Plaintiff argues that he was forced to choose between retaining his job by doing what the company physician suggested or losing his job by exercising his right to follow his personal physician's advice. This is merely a reiteration, with a slight twist, of plaintiff's earlier argument that an employer must accept the diagnosis and recommendations of an injured employee's personal physician. This is not the law. Multiple examinations by a company physician, especially over a two-year time span, as in this case, do not constitute a violation of the Act or a discharge.

■ Plaintiff next contends that the court erred in failing to instruct the jury on punitive damages. First, plaintiff argues that the court

should not have granted a directed verdict in ComEd's favor on count II of his second amended complaint, which alleged wilful and wanton conduct and sought punitive damages. Punitive damages may properly be awarded in a case sounding in retaliatory discharge. See *Kelsay*, 74 Ill. 2d at 186-87. However, such damages are available only when torts are committed with fraud, actual malice, deliberate violence or oppression, wilfulness, or such gross negligence as to indicate a wanton disregard of others' rights. *Kritzen v. Flender Corp.*, 226 Ill. App. 3d 541, 554 (1992). Punitive damages should be awarded only where the defendant's misconduct is above and beyond the conduct needed to plead a *prima facie* case. *Kritzen*, 226 Ill. App. 3d at 554. Our review of the facts of this case does not reveal the type of conduct necessary to support a claim of wilful and wanton conduct. Plaintiff's arguments allege nothing more than the conduct necessary for the basis of an action in retaliatory discharge. Furthermore, the jury found that ComEd's actions were not wrongful, let alone wilful or wanton. The trial court properly directed the verdict in ComEd's favor on count II. Therefore, the court did not err in refusing plaintiff's instructions on punitive damages.

Plaintiff next contends that the court improperly instructed the jury by refusing to give certain of his instructions to the jury and giving certain of ComEd's instructions to the jury. The trial court has considerable discretion in determining the form in which jury instructions shall be given. *Zimmer v. Melendez*, 222 Ill. App. 3d 390, 393 (1991). A new trial will be granted for refusal to give a tendered instruction only where serious prejudice to a party's right to a fair trial is shown. *Thompson v. Abbott Laboratories*, 193 Ill. App. 3d 188, 200 (1990). On appeal, the standard for determining the adequacy of instructions is whether, taken as a whole and in series, the instructions fully, fairly, and comprehensively apprise the jury of the applicable legal principles. *Thompson*, 193 Ill. App. 3d at 200. Instructions should not overemphasize any particular matter and should not confuse or mislead the jury. *Thompson*, 193 Ill. App. 3d at 200. Pattern jury instructions are to be used unless the court determines that the instruction does not accurately state the law. 177 Ill. 2d R. 239(a). A nonpattern jury instruction may be used when the court determines that the jury should be instructed on a subject for which a pattern instruction does not exist; the nonpattern jury instruction should be simple, brief, impartial, and free from argument. 177 Ill. 2d R. 239(a).

The court denied plaintiff's instruction No. 17, which, among other things, defined what plaintiff claims were some of his rights under the Act. Such definition, plaintiff argues, was lacking in the instructions that were given. However, plaintiff's No. 17 also included

language regarding wilful and wanton conduct; count II, which alleged wilful and wanton conduct, was no longer before the jury. Thus, plaintiff's No. 17 was not a proper instruction, and the court did not err in refusing to give it to the jury.

Plaintiff's nonpattern instruction No. 18 attempted to partially list plaintiff's rights under the Act. The instruction stated:

"The Illinois Worker's [sic] Compensation Act grants rights and remedies to employees who have been injured on the job. Those rights and remedies include the following:

The right to file a worker's [sic] compensation claim with the Illinois Industrial Commission, an agency of the State of Illinois;

The right to choose his own physician and hospital services at the employer's expense;

The right to exercise the choice of physician without threat of discharge or discharge;

The right to reject any medical care or advice of a physician which the employee does not choose."

However, this tendered instruction takes these rights out of context and does not accurately state the law. While injured employees may have those rights, among others, they do not have the right to eternal employment with the employer. As written, this proposed jury instruction implies that an employee may not be terminated if he decides to follow the advice of his own physician, even against the diagnosis of another physician. As we have seen, this simply is not the case. See *Hartlein*, 151 Ill. 2d at 159-60. Furthermore, the evidence did not show that plaintiff was denied his right to choose his own physician or to reject medical care offered by another doctor. This proposed instruction is inaccurate and is not based on the facts in evidence. The court did not err in refusing it.

Plaintiff's proposed instruction No. 19 dealt with the relationship between the workers' compensation settlement and any possible damages the jury would award. However, as the jury found for ComEd and no damages were awarded, the court's refusal to give this instruction is moot.

The court refused to give plaintiff's proposed instruction No. 20, which quoted from the Act. Defendant's instruction No. 25, which was given, quoted the same language from the Act. We find no error here.

Plaintiff's proposed instruction No. 23, which was refused by the court, read as follows:

"An employer's power to terminate an employee at will should not prevail when that power is exercised to prevent the employee from asserting his statutory rights under the worker's [sic] Compensation Act. The legislature enacted the worker's [sic] compensation law as a comprehensive scheme to provide for ef-

ficient and expeditious remedies for injured employees. This scheme would be seriously undermined if employers were permitted to abuse their power to terminate by threatening to discharge employees for seeking compensation under the Act. When faced with such a dilemma, many employees, whose common law rights have been supplanted by the Act, would choose to retain their jobs and thus, in effect, would be left without a remedy either at common law or statutory. This result is contrary to the public policy as expressed in the Worker's [sic] Compensation Act."

This is argumentative and reads like a closing argument. It was properly refused.

Plaintiff argues that defendant's instruction No. 25 was given in error. This instruction contained the phrase "the exercise of his or her rights or remedies granted to him or her by this act." According to plaintiff, the court then failed to instruct the jury as to what the "rights and remedies" were, thereby confusing the jury. However, the "issues" instruction given to the jury stated that plaintiff "exercised his rights under the Illinois Workers' Compensation Act by filing a workers' compensation claim against defendant." This instruction adequately stated which right was at issue in this case. Therefore, defendant's instruction No. 25 was not confusing and, therefore, not given in error.

Similarly, plaintiff next argues that defendant's instruction No. 27, which was given by the court, referred to "clear mandates of public policy" without ever telling the jury which mandates were at issue. However, a later instruction told the jury:

"It is unlawful for an employer to discharge an employee in retaliation for his filing a claim under the Workers' Compensation Act. Such a discharge violates a clear mandate of public policy of the State of Illinois."

Thus, the jury was informed as to what actions were violative of a clear mandate of public policy in this state, and the jury was properly instructed.

Plaintiff's instruction No. 16, which was refused by the court, stated that Dr. Fitzpatrick had "no lawful right or obligation to act as a treating physician for Michael Paz." This proposed instruction is argumentative and contrary to the evidence, as no one claims that Fitzpatrick did act as plaintiff's treating physician. Therefore, the court did not abuse its discretion in refusing to give this proposed instruction.

■ Plaintiff finally contends that defendant was improperly allowed to present evidence that plaintiff was not injured at work and was not injured to the extent that he claimed. According to plaintiff,

the nature, extent, and duration of a work-related injury are matters to be brought up before the Industrial Commission and were irrelevant to an allegation of retaliatory discharge. However, plaintiff himself brought up the nature and extent of his injuries, testifying that his back injuries prevented him from working restricted eight-hour shifts. If, as plaintiff contends, he was fired for exercising rights under the Act, ComEd must have the right to show that the firing was based on some other criteria. ComEd submitted evidence that plaintiff's back injuries were not work related. A firing based on nonattendance because of non-work-related injuries would not be violative of the Act. Furthermore, having an injured back is not a right under the Act. Even if plaintiff's back were injured on the job, ComEd could properly release him if the injured back prevented him from completing his duties at ComEd. Getting injured on the job does not guarantee one a job. Evidence that plaintiff injured his back in a non-work-related incident is, at worst, irrelevant; the admission of such evidence is not reversible error and does not require a new trial.

For these reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

BOWMAN, P.J., concurs.

JUSTICE COLWELL, dissenting:

Even when viewed in the light most favorable to ComEd, the evidence unequivocally shows that ComEd discharged plaintiff over a dispute concerning the extent and duration of plaintiff's back injury. For that reason, I dissent from the majority opinion.

A review of the record reveals the following facts. Plaintiff sustained knee injuries from the work-related accident of August 16, 1989, and thereafter claimed to have experienced back pains. He filed a workers' compensation claim on or about April 23, 1990.

At some point, plaintiff began receiving back treatment from two Wisconsin doctors: Dr. Sanford Larson, a neurologist; and Dr. Paul Sanford, a physiatrist. On February 7, 1991, ComEd's physician, Dr. William Fitzpatrick, examined plaintiff and concluded that he was capable of working eight-hour days with some physical restrictions. Dr. Fitzpatrick wrote Dr. Larson a letter in February 1991 informing him of the February 7 examination, and Dr. Larson responded with a letter dated February 19, 1991. Dr. Larson wrote, "I think [plaintiff] could try to return to work on a part-time basis progressing to full-time." Plaintiff thereby returned to ComEd on March 5, 1991, and

worked four-hour days within his restrictions until June 17, 1991. In June 1991, Dr. Fitzpatrick and plaintiff's supervisors agreed that claimant was capable of eight-hour, restricted-duty work. However, citing Dr. Larson's recommendations, plaintiff refused to work eight-hour days.

On June 13, 1991, plaintiff met with John Hynes, ComEd's human resources representative. Hynes's notes from that meeting state that plaintiff "was told that if he does not work the full 8 hour restricted duty day on June 17, 1991, or does not bring in a [doctor's] note for our Medical department to review, he will be sent home on suspension." On June 17, claimant gave Hynes a letter from Dr. Larson dated May 14, 1991. In the letter, Dr. Larson reiterated that plaintiff's back condition limited him to a four-hour work day. Hynes forwarded the letter to Dr. Fitzpatrick, who disagreed with Dr. Larson's assessment. Dr. Fitzpatrick informed Hynes on June 19, 1991, that plaintiff was capable of working eight-hour days.

At another meeting, held on June 21, 1991, Hynes informed plaintiff that (a) Dr. Fitzpatrick did not accept Dr. Larson's four-hour work limit, (b) Dr. Fitzpatrick had released him for eight-hour workdays and (c) the only work ComEd had available for plaintiff was eight-hour-a-day restricted-duty work. Again citing Dr. Larson's restrictions, plaintiff refused to work eight-hour days and consequently did not return to work for ComEd. Although it stopped paying plaintiff's temporary total disability (TTD) benefits retroactive to June 17, 1991, ComEd did not fire plaintiff just yet.

On August 15, 1991, plaintiff went into Hynes's office, and Hynes again informed him that ComEd had eight-hour-a-day work available within his restrictions. Plaintiff did not accept the work. Dr. Fitzpatrick then arranged for an outside orthopedic surgeon, Dr. James Milgrom, to examine plaintiff on August 27, 1991. Dr. Milgrom found no reason why plaintiff could not return to work full-time without restrictions. Meanwhile, plaintiff continued treating with Dr. Larson and Dr. Sanford in August and September 1991. Neither doctor released plaintiff for full-time work prior to November 7, 1991.

Plaintiff met with Dr. Fitzpatrick on October 24, 1991. Dr. Fitzpatrick showed him a copy of Dr. Milgrom's report and said that plaintiff was fit to return to work eight hours a day. However, because plaintiff was suffering from the flu, Dr. Fitzpatrick had plaintiff return for an examination on October 28, 1991. Dr. Fitzpatrick examined plaintiff on October 28 and would have released him for work; however, since plaintiff still had the flu, Dr. Fitzpatrick scheduled a follow-up examination for November 7, 1991.

On the morning of November 7, 1991, Dr. Fitzpatrick examined

plaintiff, determined that he was no longer ill, and filled out a return-to-work slip. On that slip, which was time-stamped 8:27 a.m., Dr. Fitzpatrick checked the "restricted duty" box and left unchecked the "part time duty ___ hrs per day" box. Dr. Fitzpatrick wrote on the slip, "start today," and testified that he specifically told plaintiff that he was releasing plaintiff for eight-hour, restricted-duty work. If we view the evidence in ComEd's favor, Dr. Fitzpatrick gave plaintiff the return-to-work slip and told him to return to work that day. Plaintiff did not return to work, though.

Following the examination, Dr. Fitzpatrick informed Hynes that he had released plaintiff for work. After learning that plaintiff had not reported to work that morning, Hynes assisted Charles Schumann, plaintiff's plant manager, in drafting a termination letter. That letter, signed by Schumann, read:

> "You were released this day November 7, 1991 to return to work by the medical department of Commonwealth Edison Company. Due to your failure to report as directed, you have been removed from the payroll *** effective November 7, 1991."

They then express-mailed the letter to plaintiff's address, where plaintiff received it early that afternoon.

Plaintiff and ComEd settled the workers' compensation claim on October 7, 1993. The settlement contract stated that plaintiff sustained injuries to his "[r]ight knee and back" as a result of the August 16, 1989, accident.

Following trial, plaintiff sought a judgment against ComEd on the basis that ComEd committed a *per se* violation of the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1996)). The circuit court denied that motion, which was essentially a motion for a directed verdict on the liability issue. Plaintiff raises the same issues in his appellate brief as he did in his motion for a directed verdict, and I believe the circuit court erred in denying that motion.

A motion for a directed verdict will not be granted unless "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). Our review of a circuit court's ruling on a motion for a directed verdict is *de novo. Los Amigos Supermarket, Inc. v. Metropolitan Bank & Trust Co.*, 306 Ill. App. 3d 115, 130 (1999).

To recover for retaliatory discharge, a claimant must show that (1) he was an employee of the defendant before or at the time of the injury, (2) he exercised some right granted by the Act (820 ILCS 305/1 *et seq.* (West 1996)), and (3) his discharge was causally related to the

exercise of rights under the Act. *Clark v. Owens-Brockway Glass Container, Inc.*, 297 Ill. App. 3d 694, 697 (1998). Only the third element—ComEd's motive in firing plaintiff—was at issue at trial. ComEd's motive was a question of fact. *Austin v. St. Joseph Hospital*, 187 Ill. App. 3d 891, 897 (1989). The element of causality is not met if the employer has a valid basis, which is not pretextual, for discharging the employee. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 160 (1992). A pretext is a purpose or motive alleged or an appearance assumed in order to cloak the real intention or state of affairs. *Marin v. American Meat Packing Co.*, 204 Ill. App. 3d 302, 307 (1990). An employer may fire an employee for excessive absenteeism, even if the absenteeism is caused by a compensable injury (*Hartlein*, 151 Ill. 2d at 160), but "[a]n employer may not discharge an employee on the basis of a dispute about the extent or duration of a compensable injury" (*Clark*, 297 Ill. App. 3d at 699).

The parties in this case do not dispute that, at the time ComEd discharged plaintiff, Dr. Larson believed plaintiff could work only four-hour days with restrictions and Dr. Fitzpatrick believed plaintiff could work eight-hour days with restrictions. Thus it was undisputed that there was a "dispute about the extent or duration" of plaintiff's back injury. See *Clark*, 297 Ill. App. 3d at 699. Also undisputed was the fact that ComEd would only allow plaintiff to return to work if he worked eight-hour days with restrictions.

Although ComEd's defense at trial was that it discharged plaintiff for failing to return to work on November 7, underlying ComEd's decision to fire plaintiff was its own determination that plaintiff was in fact capable of working eight-hour days. The problem with that determination, however, was that ComEd effectively substituted its own judgment for that of the Industrial Commission, the agency responsible for determining the nature and extent of work-related injuries. See 820 ILCS 305/18 (West 1996) ("[a]ll questions arising under this Act, if not settled by agreement of the parties interested therein, shall, except as otherwise provided, be determined by the Commission"); *Illinois Forge, Inc. v. Industrial Comm'n*, 95 Ill. 2d 337, 343 (1983) ("[t]he drawing of factual inferences concerning the nature and extent of disabilities based on medical testimony is peculiarly in the province of the Industrial Commission's expertise"). If ComEd wanted a decision on whether plaintiff was capable of working eight-hour days, it should have sought an arbitration hearing pursuant to the procedure set forth in section 19(p) of the Act (820 ILCS 305/19(p) (West 1996)). Nonetheless, ComEd failed to do so. Under the circumstances, because ComEd fired plaintiff while a dispute over whether plaintiff could work eight-hour days existed, the undisputed facts show that ComEd

discharged plaintiff "on the basis of a dispute about the extent or duration of a compensable injury." *Clark*, 297 Ill. App. 3d at 699. I reach that conclusion even viewing the evidence in the light most favorable to ComEd and under the assumption that plaintiff disobeyed an order to return to work. While an employer may withhold TTD benefits based on a reasonable interpretation of conflicting medical opinions during the pendency of a workers' compensation claim (see *Little Company of Mary Hospital v. Industrial Comm'n*, 256 Ill. App. 3d 1036, 1040 (1993)), an employer should not have the right to unilaterally discharge an employee under the same circumstances.

ComEd relies upon two cases, *Marin*, 204 Ill. App. 3d 302, and *Austin*, 187 Ill. App. 3d 891, in support of its contention that it had the right to discharge plaintiff for failing to return to work. The court in both cases held that it was within the rights of the employers to discharge the plaintiffs, both of whom failed to report to work on time as directed. *Marin*, 204 Ill. App. 3d at 309; *Austin*, 187 Ill. App. 3d at 897. Although the plaintiffs in both cases claimed that their treating physicians had not yet released them to work prior to the directed dates of return, other evidence established that the treating physicians had in fact released them. *Marin*, 204 Ill. App. 3d at 305-06; *Austin*, 187 Ill. App. 3d at 894-95. The difference between those cases and this one is the fact that in *Marin* and *Austin* there was no medical disagreement surrounding the employers' decision to fire the plaintiffs, whereas in this case there was. That distinction is significant, given that the responsibility of resolving disputes over the nature and extent of work-related injuries is for the Industrial Commission only. See 820 ILCS 305/18 (West 1996); *Illinois Forge*, 95 Ill. 2d at 344.

ComEd also relies upon *Hartlein*, where our supreme court rejected the plaintiff's claim of retaliatory discharge, stating that "Illinois law does not obligate an employer to retain an at-will employee who is medically unable to return to his assigned position." *Hartlein*, 151 Ill. 2d at 159. *Hartlein*, however, is also distinguishable from the instant case. In *Hartlein*, it was undisputed that the plaintiff's work-related injury prevented him from ever returning to his former position within the company; in this case, by contrast, plaintiff's ability to return to work was disputed. Therefore, unlike the situation in *Hartlein*, the employer in this case did not have the right to terminate plaintiff based on a determination that he was medically unable to return to work. Given the conflicting medical evidence, that determination could only have been made by the Industrial Commission.

If the Industrial Commission determined that plaintiff was capable of returning to work, *only then* could ComEd demand that plaintiff return to work, and *only then* could ComEd terminate plaintiff for fail-

ing to do so. If, on the other hand, the Industrial Commission determined that plaintiff was incapable of returning to work, ComEd could terminate plaintiff, but not without offering him vocational rehabilitation. See 820 ILCS 305/8(a) (West 1996) (as a result of an accidental injury, "[t]he employer shall \*\*\* pay for treatment, instruction and training necessary for the physical, mental and vocational rehabilitation of the employee"); *Hartlein*, 151 Ill. 2d at 165 (same). The record, however, contains no suggestion that ComEd ever offered plaintiff vocational rehabilitation. Thus, if ComEd fired plaintiff based on plaintiff's physical inability to return to work, ComEd's actions still constituted a violation of the Act.

Since ComEd improperly circumvented the Workers' Compensation Act through the way in which it fired plaintiff, plaintiff was entitled to a directed verdict against ComEd on the liability issue. I therefore would reverse the judgment in favor of ComEd on the retaliatory discharge claim and remand the cause for a trial on damages only.